UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ------------------------------------------ | : | |
| UNITED STATES OF AMERICA | : | No. 3:13cr044 (MPS) |
| | : | |
| v. | : | |
| | : | |
| JAMES BROWN | : | May 4, 2015 |
| ------------------------------------------ | : | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN AID OF SENTENCING**

Defendant James Brown respectfully requests that this court order that the sentence imposed upon him in connection with the above-captioned case run concurrently with state sentence he is now servint, with credit for time served.

On January 10, 2013 Mr. Brown was arrested in connection with the offense for which he received the four-year state-court-imposed sentence which is the subject of this request for concurrent time.

The PSR describes the conduct that produced that sentence as follows:

This offense is the same conduct described in the Offense Conduct section of the presentence report. Mr. Brown remains in state custody for this offense, serving a state sentence. A review of Mr. Brown's DOC movement record reveals that his maximum release date is November 22, 2016.
PSR Par 35,

USSG § 5G1.3(b) provides:

If sub section (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under provisions of subsections (a)(1), (a)(2) or (a)(3) of §1B1.3 (Rlevant Conduct), the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the on discharged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentenced by the Bureau of prisons, and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment

The 2014 Edition of the Second Circuit Criminal Case Handbook clearly confirms that the sentence should be imposed to run concurrently:

> …the terms of imprisonment are to run concurrently if all of the offense conduct that led to the undischarged term of imprisonment was part of the "relevant conduct" of the offense of conviction under U.S.S.G. § 1B1.3(a)(1)-(3) and was the basis for an increase in the offense level. See § 5G1.3(b). If there has been time served on the undischarged term that will not be credited to the new sentence by the Bureau of Prisons, the court should adjust the sentence by reducing it accordingly. U.S.S.G. § 5G1.3(b), comment. (n. 2(C)). Thus, when subsection (b) is applicable, it can produce a sentence reduction as well as a concurrent sentence. For example, if the defendant is already serving a state sentence for a drug sale taken into account as relevant conduct in establishing his federal sentence, the federal sentence: (1) should be reduced to reflect the amount of time he has already served in state custody and (2) should be made to run concurrently with the remainder of the state term. See § 5G1.3(b), comment. (n.2(D)); see also United States v. Gonzalez, 192 F.3d 350, 355 (2d Cir. 1999) (requiring sentencing court to follow the methodology in application note 2, rather than attempting to "backdate" the beginning of the new sentence). Any reduction of the sentence to reflect time already served on an offense that is fully included in the relevant conduct of the instant offense and increases the offense is not a departure. Rather, as directed by the application note, it should be noted on the judgment as an adjustment under § 5G1.3(b). See § 5G1.3, comment. (n.2(c)); United States v. Fermin, 252 F.3d 102, 107 (2d Cir. 2001).
>
> The provision of § 5G1.3 "mitigate[s] the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." Witte v. United States, 515 U.S. 389, 405 (1995). It applies even when the sentence is imposed pursuant to an agreement under Fed. R. Crim. P. 11(e)(1)(C), as long as the agreement is "mute about how the sentence is to interact with an existing undischarged sentence." Williams, 260 F.3d at 165. Indeed, if the conduct underlying the undischarged term is fully included in the relevant conduct of the offense of conviction and elevates the offense level, even a mandatory minimum sentence may be reduced to reflect the amount of time already served, as long as the total period of

LAW OFFICES OF ROBERT SULLIVAN 190 Main Street Westport, CT 06880 Tel. 227-1404 Juris No. 405837 Federal Bar No. CT08969

incarceration, after the adjustment, equals or exceeds the applicable mandatory minimum sentence. See <u>United States v. Rivers</u>, 329 F.3d 119, 122 (2d Cir. 2003).
Federal Criminal Practice: A Second Circuit Handbook, § 42-41

With respect to the probation violation, the Second Circuit Handbook also observes:

> What happens if the defendant committed his offense while on federal or state supervised release, parole, or probation, and that status is revoked prior to sentencing? An application note states that § 5G1.3(c) applies, but "recommends" that the sentencing court run the new sentence consecutively to the term imposed for the violation of the release, parole, or probation. § 5G1.3, comment. (n.3(c)); see also <u>United States v. Galicia-Delgado</u>, 130 F.3d 518, 522 (2d Cir. 1997). **However, the Second Circuit has held that, in a case governed by § 5G1.3(c), the sentencing court possesses "discretion to take a course of action not suggested by the Note, [i.e., impose concurrent sentences,] should that court conclude that the circumstances of a given case warrant such a deviation." Maria, 186 F.3d at 71 (discussing predecessor to note 2(c)).**
> Id.

In addition to the concurrency called for by USSG 5G1.3(b), it is also undisputed, not only that 5G1.3(d) provides the court with discretion to impose a concurrent sentence, but that, after consideration of the guidelines, the court still retains discretion to impose a concurrent sentence. <u>Setser v. United States</u>, 132 S.Ct 1463, 1468 (2012)

The undischarged sentence in this case resolved the state's claim as to Mr. Brown's culpability for both the relevant conduct contemplated by this case and any probation violation promulgated thereby. The government was well aware of the arrest and prosecution - the conduct and the arrest occurred during the course of the government's surveillance of Mr. Brown. The government is always in a position to communicate with its counterparts in the state criminal justice system. Indeed, its investigations are frequently pursued in collaboration with the state pursuant to State-Federal Joint task forces. The government was free to coordinate the state disposition with its own. Undersigned counsel was not present for the chambers

–3–

discussions that led to the pleas and sentences imposed, but they generally involve a detailed exchange by the parties, with the participation of the court, of the appropriate combined sentence to be imposed by the court for the offenses and probation violation. In this case it was four years, to run concurrently with the probation violation.

It would, respectfully, be unfair for the participants in this proceeding to presume to be in a better position than the original sentencing court to assess the punishment to be imposed than the court responsible for imposing it and supervising the probation violation in the first place.

Mr. Brown was taken into custody at the time of his state arrest. Therefore, any involvement he may have had in drug sales concluded at that point. There is a similarity of sentences; the minimum this court can impose of five years, which is one year more than was imposed in the state court. His sentence guideline includes calculations for criminal history and for the fact that he was on probation at the time of the crime (PSR Par 37)

Finally, it should be said that with respect to the first conviction, the assault was not committed by Mr. Brown but by one claimed to have been a person associated with him. With respect to the possession of the shotgun, such a gun was found by the police at Mr. Brown's mother's house at a location which was not accessible to Mr. Brown by wheelchair. Notwithstanding the willingness of another individual to acknowledge responsibility for the weapon, Mr. Brown did so to avoid any taint attributable to his mother.

LAW OFFICES OF ROBERT SULLIVAN 190 Main Street Westport, CT 06880 Tel. 227-1404 Juris No. 405837 Federal Bar No. CT08969

For all of these reasons, the court should run the sentence concurrently with the state sentence, with credit for time served.

LAW OFFICES OF ROBERT SULLIVAN  190 Main Street  Westport, CT 06880  Tel. 227-1404  Juris No. 405837 Federal Bar No. CT08969

Respectfully submitted,
DEFENDANT JAMES BROWN

By /s/ Robert J. Sullivan, Jr.
_____
Robert J. Sullivan, Jr.
LAW OFFICES OF ROBERT SULLIVAN
190 Main Street
Westport, Connecticut 06880
Tel. No. 203/227-1404
Federal Bar No. CT08969
RSullivan@SullivanFirm.net
DLoConte@SullivanFirm.net

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 4, 2015, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

      /s/ Robert J. Sullivan, Jr.
      _____
      Robert J. Sullivan, Jr.
      LAW OFFICES OF ROBERT SULLIVAN
      190 Main St., Westport, CT 06880
      Phone: 203/227-1404
      Fax: 203/226-6403
      Federal Bar No. CT08969